STATE OF NORTH CAROLINA v. JAMES FRANKLIN WEST

No. COA06-205

(Filed 19 December 2006)

## 1. Larceny— two charges—separate offenses

The trial court did not err by not dismissing or arresting judgment on one of two counts of felonious larceny where defendant was convicted of larceny of a firearm with respect to a shotgun stolen from a truck and the larceny of a separate vehicle in which he left the scene. Although defendant contended that the two charges were part of the same transaction, there was substantial evidence of two separate acts. The distinct nature of the items and the charges was reenforced during the jury instructions.

## 2. Homicide— second-degree murder—manslaughter instruction refused

The trial judge did not err in a second degree murder prosecution in its refusal to instruct on voluntary manslaughter where there was no evidence of either self-defense or heat of passion following provocation. Defendant put on evidence of diminished capacity, but diminished capacity short of insanity is not a defense to malice. Defendant did not raise at trial the question of whether the refusal to instruct on manslaughter elevated the permissive inference arising from use of a deadly weapon to an unconstitutional rebuttable presumption and the argument was not considered on appeal.

## 3. Sentencing— calculation of prior record level—joined charges

Nothing in the Structured Sentencing Act specifically addresses the effect of joined charges when calculating previous convictions to arrive at prior record levels, and the assessment of a prior record level when sentencing defendant for second-degree murder by using convictions for offenses which had been joined for trial with the murder charge would be unjust and in contravention of the intent of the General Assembly, as well as the rule of lenity. The sentence here was remanded.

Appeal by defendant from judgment entered 15 September 2005 by Judge James F. Ammons in Cumberland County Superior Court. Heard in the Court of Appeals 30 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Richard J. Votta, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from a judgment entered upon his conviction by a jury of second degree murder, two counts of felony larceny and one count of breaking and entering an automobile. At trial, the State put forth evidence to show that on 19 December 2003, defendant was living with Brooks Bullard, his supervisor at work. On the morning of 19 December 2003, Bullard went outside and found his 1999 Pontiac automobile missing from his driveway. The screen covering defendant's window was off and defendant was gone. Bullard soon discovered that a shotgun he owned was missing from a pick-up truck also parked in the driveway.

Sometime around 12:40 and 1:00 p.m. of the same day, Russ Hammonds, the sole occupant of a Colonial Realty office building, was shot and killed. While investigating, officers came across defendant in his mother's house next door to the crime scene. Officer Donald McLamb testified that defendant admitted entering the office and shooting the victim. Defendant told police that he stole the car and the shotgun from Bullard and drove to the apartment complex across the street from his mother's house. He hid in the woods surrounding the apartment complex until morning. Before his mother left for work, defendant walked to her house and spoke with her. After she left, defendant brought the shotgun inside and hid it under the couch. Defendant later walked to the building next door, entered without knocking and shot the victim. Following the shooting, defendant returned to his mother's home and watched television. Defendant told the officers that he did not know the victim or why he had shot him.

Defendant's motion to dismiss the charges at the close of the State's evidence was denied. Defendant then offered evidence tending to show that while growing up, defendant struggled in school, was exposed to alcohol, drugs and pornography at an early age and was verbally and physically abused by his parents as well as others. Dr. Claudia Coleman, a psychologist, testified that defendant suffered from mild depression, functioned at a low intelligence level and evinced behavior indicative of borderline personality disorder. Dr.

Coleman opined that, as a result of defendant's conditions, stressful situations were likely to break him down cognitively. Defendant's renewed motion to dismiss at the close of all the evidence was also denied.

I.

**[1]** Defendant contends the trial court erred in failing to dismiss or arrest judgment in one of the two counts of felony larceny. We disagree.

"When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied." *State v. Bellamy*, 172 N.C. App. 649, 656, 617 S.E.2d 81, 87 (2005) (quoting *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982)). "Substantial evidence is relevant evidences that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). In ruling on a motion to dismiss, the court must view the evidence in a light most favorable to the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citations omitted).

In the present case, defendant was convicted of larceny of a firearm with respect to the shotgun stolen from Bullard's employer's truck, pursuant to N.C.G.S. § 14-72(b)(4), as well as larceny of Bullard's Pontiac automobile, pursuant to N.C.G.S. § 14-72(a). Defendant argues that the two felony larceny charges were all part of the same transaction and therefore constituted a single offense. "A single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place." *State v. Froneberger*, 81 N.C. App. 398, 401, 344 S.E.2d 344, 347 (1986). When a firearm is stolen, a defendant may not be charged with both felonious larceny of a firearm and felonious larceny of property including that same firearm. *State v. Adams*, 331 N.C. 317, 333, 416 S.E.2d 380, 389 (1992).

This case, however, involved the application of two distinct statutory provisions with each larceny charge predicated on separate

and unrelated property. *See State v. Barton*, 335 N.C. 741, 746, 441 S.E.2d 306, 309 (1994) (finding two separate takings where a wallet and automobile were stolen, forming the basis for a robbery charge, and a firearm was later taken after it was discovered in the automobile, forming the basis for a larceny charge). At trial, the State put forth substantial evidence showing two separate acts of larceny. First, defendant entered a truck used by Bullard and owned by defendant's employer and stole Bullard's shotgun that was locked behind the truck's seats. Defendant stole the shotgun to use as an outlet for his anger when he shot and killed a stranger. After stealing the shotgun, defendant then entered and stole the Pontiac automobile. Defendant left the scene using the automobile and traveled to his mother's house.

The distinct nature of the items and their respective charges were reenforced to the jury by the trial judge during jury instructions. As to the first count of felonious larceny, the trial judge's instructions referenced only the firearm. For the second count of felonious larceny, the trial judge explicitly indicated this count was "in regard to the 1999 Pontiac Grand Prix." Further, the different purpose for which the shotgun and automobile were used suggests that each taking was motivated by a unique criminal impulse or intent and constitutes multiple takings. *State v. Weaver*, 104 N.C. 758, 760, 10 S.E. 486, 487 (1889) (indicating that "[w]hen several articles are taken at one time, and the transaction is set in motion by a single impulse, and operated upon by a single unintermittent force, it forms a continuous act, and hence must be treated as one larceny[.]")

This case can be distinguished from *State v. Marr*, 342 N.C. 607, 467 S.E.2d 236 (1996), relied upon by defendant, where charges for individual items stolen in a single criminal incident were overturned. In *Marr*, there was evidence that two buildings were entered, tools and other items were stolen from both buildings and two vehicles were taken. *Id.* at 610, 467 S.E.2d at 237. Each item was taken with the single objective of stealing the victim's tools for defendant's use and for resale. *Id.* The perpetrators in *Marr* did not have the unique criminal impulse or intent motivating multiple takings as suggested by the current case's evidence.

The State has presented substantial evidence of two separate takings to support two felony larceny convictions. Accordingly, defendant's motion to dismiss was properly denied and both charges of felonious larceny were properly submitted to the jury.

## II.

**[2]** Defendant next argues that the trial court erred in its refusal to instruct the jury on voluntary manslaughter. "A defendant is entitled to have a lesser included offense submitted to the jury only when there is evidence to support that lesser included offense." *State v. Smith*, 351 N.C. 251, 267, 524 S.E.2d 28, 40 (2000). If the State presents sufficient evidence "to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those elements other than defendant's denial that he committed the offense, defendant is not entitled to an instruction on the lesser offense." *Id.* at 267-68, 524 S.E.2d at 40.

The elements of second degree murder are that defendant unlawfully kill another person with malice and that the killing occur without premeditation and deliberation. *State v. Norris*, 303 N.C. 526, 529, 279 S.E.2d 570, 572 (1981). Voluntary manslaughter is an intentional killing without malice committed either in the heat of passion or through imperfect self-defense resulting in excessive force. *State v. Lyons*, 340 N.C. 646, 663, 459 S.E.2d 770, 779 (1995). The malice at issue, on the facts of this case, is the "condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982). Using this definition, malice may be inferred from the intentional infliction of a fatal wound using a deadly weapon. *State v. Holder*, 331 N.C. 462, 487-88, 418 S.E.2d 197, 211 (1992).

In this case, there was no evidence of either self-defense or heat of passion following provocation. At trial, defendant put on evidence of his diminished capacity. Diminished capacity that does not amount to legal insanity is not, however, a defense to the element of malice. *State v. Page*, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997). The State presented evidence sufficient to satisfy its burden of proving each element of second degree murder, and there was no evidence presented to negate any of those elements.

Defendant argues that because the malice in this case is based on a permissive inference arising out of the intentional use of a deadly weapon, the jury should have the option of rejecting the inference in favor of voluntary manslaughter. Defendant contends that the trial court elevated the permissive inference of malice to a rebuttable presumption of malice in failing to instruct on voluntary manslaughter. Rebuttable presumptions shift the burden of proof to the defendant

and are in violation of the Due Process Clause of the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 326, 85 L. Ed. 2d 344, 361 (1985). Defendant did not raise this constitutional issue before the trial court and, as a result, we will not consider it here. *See State v. Hunter*, 305 N.C. 106, 111-12, 286 S.E.2d 535, 539 (1982).

III.

[3] Defendant assigned error to the trial court's computation of his prior record level under North Carolina's Structured Sentencing Act ("Sentencing Act") in sentencing him for second degree murder. *See* N.C. Gen. Stat. §§ 15A-1340.10 *et seq.* (2005). The trial court counted prior record points for offenses which had been joined for trial with the murder charge. Defendant argues that to do so was a violation of the Sentencing Act and a violation of defendant's constitutional rights. The State does not contest this assignment of error.

N.C.G.S. § 15A-1340.13(b) requires that the court determine a defendant's prior record level pursuant to N.C.G.S. § 15A-1340.14 when sentencing for a felony conviction. "The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court . . . finds to have been proved in accordance with this section." N.C. Gen. Stat. § 15A-1340.14(a). "A person has a prior conviction when, *on the date a criminal judgment is entered*, the person being sentenced has been previously convicted of a crime[.]" N.C. Gen. Stat. § 15A-1340.11(7) (emphasis added). "As a criminal sentencing statute, the Act must be strictly construed." *State v. Reaves*, 142 N.C. App. 629, 632, 544 S.E.2d 253, 255 (2001).

The trial court sentenced defendant for his convictions of larceny of a firearm, larceny of an automobile and breaking and entering an automobile, before recessing for lunch. Upon reconvening, the trial court assigned defendant two prior record points for one of the Class H larcenies and proceeded to sentence defendant for second degree murder as a Level II offender. Nothing within the Sentencing Act specifically addresses the effect of joined charges when calculating previous convictions to arrive at prior record levels. We agree with defendant that the assessment of a defendant's prior record level using joined convictions would be unjust and in contravention of the intent of the General Assembly. *See State v. Jones*, 353 N.C. 159, 170, 538 S.E.2d 917, 926 (indicating that "[w]hen interpreting statutes, this Court presumes that the legislature did not intend an unjust result").

Further, "the 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *State v. Boykin,* 78 N.C. App. 572, 577, 337 S.E.2d 678, 681 (1985); *see also State v. Hanton,* 175 N.C. App. 250, 259, 623 S.E.2d 600, 606 (2006) (applying the rule of lenity to a statutory ambiguity concerning prior record points for out-of-state convictions).

We remand this case to the trial court for an entry of judgment on the second degree murder conviction which accurately reflects defendant's prior record level.

No error in the trial; remanded for resentencing.

Judges TYSON and CALABRIA concur.