NO. COA13-925

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.

THORNE OLIVER WATLINGTON

Alamance County
No. 11 CRS 54814

Appeal by Defendant from judgments entered 30 November 2012 by Judge Henry W. Hight, Jr. in Superior Court, Alamance County. Heard in the Court of Appeals 4 February 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defenders John F. Carella and Benjamin Dowling-Sendor, for Defendant.*

McGEE, Judge.

Keith LaMay, Sr. ("LaMay, Sr.") and Keith LaMay, Jr. ("LaMay, Jr.") were robbed at gunpoint in the parking lot of an Arby's restaurant in Burlington at approximately 1:30 a.m. on 30 July 2011. Thorne Oliver Watlington ("Defendant") was tried on six charges related to that robbery at the 25 September 2012 criminal session of Superior Court, Alamance County, along with charges related to other incidents. A jury convicted Defendant

of charges unrelated to the Arby's incident on 5 October 2012, found Defendant not guilty of three charges related to the Arby's incident, but was unable to reach a unanimous verdict on three additional charges related to the Arby's incident. The trial court declared a mistrial on the last three charges: two counts of robbery with a firearm and one count of attempted robbery with a firearm. Defendant appealed from the 5 October 2012 judgments, and that appeal is decided in *State v. Watlington*, ___ N.C. App. ___, ___ S.E.2d ___ (2014) ("*Watlington I*") (COA13-661, filed on the same date as this opinion). Defendant was re-tried on the three remaining charges and was found guilty on all three charges on 30 November 2012. Defendant appeals. A full factual recitation may be found in this Court's opinion in *Watlington I*.

I.

Defendant contends in his first argument that the trial court erred in refusing to give the jury a requested instruction. We disagree.

Defendant made this same argument in *Watlington I*. In *Watlington I*, this Court found no error in the trial court's decision not to give the instruction Defendant requested. Defendant's argument presents the same issue already decided

against Defendant in *Watlington I*. Therefore, in the present case, we must also find no error as related to this issue.

## II.

Defendant contends in his second argument that the trial court erred by allowing the State's fingerprint expert to testify, "because her proffered method of proof was an unreliable and untested system[.]" This argument has not been preserved for appellate review.

Lori Oxendine ("Oxendine"), a civilian employee of the Burlington Police Department testified as an expert in fingerprint identification. At trial, Defendant moved to exclude Oxendine's testimony. Defendant's attorney engaged in the following relevant colloquy with the trial court:

> MR. CHAMPION: Your Honor, at this time I'd like to renew my motion that I had filed back before the first trial in this action, involving these cases, in which I objected to the scientific basis or reliability of fingerprint testimony.
>
> THE COURT: I've -- you've passed up an article which was reviewed. If you've got any other evidence you would like to show, I'll be more than happy to hear it. I [am] assuming you have some person who's going to get up here and testify that it's not reliable.
>
> MR. CHAMPION: No, sir.
>
> THE COURT: Well, you can cite me to somebody who says it's not reliable and has not been held so in any court in North

Carolina or the Fourth District.

MR. CHAMPION: No, Your Honor, I'm just making[—]

THE COURT: I understand that. I just want it to be clear for the record what it is.

MR. CHAMPION: No, sir, other than what I've already handed up for the court to review. I just wanted --

THE COURT: And I want you to know that I'll give you any opportunity you want to put on any person who would challenge that here in front of this [c]ourt, so that we can make a record.

MR. CHAMPION: Yes, sir. I do not have anyone to present.

THE COURT: Okay.

MR. CHAMPION: Out of an abundance of caution, I would be objecting to her qualifications as an expert in fingerprint comparison or identification. I don't know if the Court would want to bring the jury back in to go through preliminaries and then --

THE COURT: Okay. And based upon, if you want to challenge her qualifications now, I'll be more than happy to [do] that in the absence of the jury, you know, give you an opportunity to do that. Although, she's testified in front of us on something earlier, this is a different trial. So I'll be glad to hear you.

Mr. Champion then commenced *voir dire* of Oxendine, and concluded by stating: "No more questions on qualifications." The State then questioned Oxendine, and Mr. Champion declined to

question her further. Mr. Champion argued his motion to the trial court, and the trial court responded, as follows:

> THE COURT: Okay. I'll be glad to hear you now, but I mean, from what I recall is based upon her 24 years of training and experience or 24 years of experience daily in fingerprint comparison and identification, her prior training, she would appear to qualify to have knowledge to make a comparison and a determination. If you've got something different.

> MR. CHAMPION: Your Honor, I, several of the agencies that are, that qualify and certify people, she does not have the qualifications. She's not even aware of their qualifications. She understands that they have some agencies that qualify even including bachelor degrees and some science degree level work. This is considered scientific type evidence, more so than, okay, that's a green shirt versus a green shirt. This is actually looking at microscopic level work, and we just don't feel like she has the, the training and educational experience to qualify her as an expert in fingerprint analysis and comparisons.

> THE COURT: Thank you, sir. Noted for the record. If she's appropriately qualified in front of the jury, I will accept her.

Although Defendant may have handed some materials to the trial court regarding "the reliability of fingerprint testimony," Defendant did not directly challenge the reliability of fingerprint testimony in general, or more particularly, the reliability of the methods used by Oxendine. Defendant challenged Oxendine's qualifications to testify as an expert in

fingerprint analysis, and the trial court made a ruling only on that challenge.

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C.R. App. P. 10(a)(1). "The appellate courts will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Washington*, 134 N.C. App. 479, 485, 518 S.E.2d 14, 17 (1999) (citation omitted).

Because Defendant failed to properly move for exclusion of Oxendine's testimony on the basis that the methods used by Oxendine were not reliable, and because the trial court never ruled on any such motion, that issue is not properly before us. *Id.* This argument is dismissed.

III.

Defendant contends in his third argument that the trial court committed reversible error in overruling Defendant's objections during the State's closing argument. We disagree.

Our Supreme Court has stated:

> Counsel is given wide latitude to argue the facts and all reasonable inferences which may be drawn therefrom, together with the

relevant law, in presenting the case to the jury. The trial court is required, upon objection, to censor remarks either not warranted by the law or facts or made only to prejudice or mislead the jury. The conduct of the arguments of counsel is left to the sound discretion of the trial judge. In order for defendant to be granted a new trial, the error must be sufficiently grave that it is prejudicial. Ordinarily, an objection to the arguments by counsel must be made before verdict, since only when the impropriety is gross is the trial court required to correct the abuse e*x mero motu*.

*State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977) (citations omitted). The portion of the State's closing at issue was as follows:

Ladies and gentlemen, again, Andre McLaughlin [who was also charged in the Arby's incident] has a lot to answer for, but on the, that one incidence, rifle had 14 rounds in it, one for each, actually each one each of you jurors, and –

MR. CHAMPION: Objection.

MR. THOMPSON: -- one to spare.

THE COURT: Go on.

MR. THOMPSON: If [Defendant] had gotten hold of this rifle, this might have been an entirely different kind of case. But be that as it may, he didn't get the rifle, but he did commit a robbery.

I'm not sure if I've been talking 30 minutes or so. I'm not going to take up the whole time.

Mr. Thompson then concluded his closing argument with a few additional statements.

We hold that the remarks by the State were improper, and should have been precluded by the trial court. The trial court then should have given a curative instruction. There was no basis for the State's implication that, had Defendant had the rifle, "this might have been an entirely different kind of case." Furthermore, stating that there was a round for each member of the jury and "one to spare" was clearly inappropriate. Defendant properly objected to the comment concerning "14 rounds," but failed to object to the comment concerning what might have occurred had Defendant had the rifle. There are different standards of review, depending on whether Defendant objected to the argument at trial.

> The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection. *See, e.g., State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E.2d 110, 122 (1984) (holding that appellate courts will review the exercise of such discretion when counsel's remarks are extreme and calculated to prejudice the jury)[.]

*State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citation omitted). If we find the argument was improper, "we

[next] determine if the remarks were of such a magnitude that their inclusion prejudiced defendant[.]" *Id.*

However, the standard of review when no objection has been made requires an elevated showing of impropriety.

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu.* In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*Id.* at 133, 558 S.E.2d at 107 (citations omitted).

Although we find that these comments were improper, we do not find, pursuant to either appropriate standard, that error requiring a new trial resulted from these comments in the State's closing argument. LaMay, Sr. and LaMay, Jr. both returned to the Arby's parking lot early 30 July 2011, approximately eight hours after the robbery. **T306-07** LaMay, Jr. found an identification card in the woods near the Arby's parking lot, and showed it to LaMay, Sr., who said: "That's the guy that robbed us." That identification card belonged to

Defendant. Law enforcement officers located Defendant in Apartment F of Forestdale Apartments in Burlington, immediately after other individuals involved in the robbery were arrested as they exited Apartment F. When officers knocked on the door of Apartment F, Defendant opened the door, then immediately closed it upon seeing the officers. Defendant has failed in his burden of showing prejudice resulted from the improper statements made by the State in its closing argument.

IV.

Defendant contends in his final argument that the trial court erred in increasing his sentence based upon his convictions for charges that had been joined for trial with the charges currently before us. We agree.

Before Defendant's first trial, the State moved to join all charges: felonious breaking or entering, felonious larceny, two counts of felonious possession of stolen goods, breaking or entering into a motor vehicle, assault by pointing a gun, possession of a firearm by a felon, two counts of robbery with a firearm, two counts of attempted robbery with a firearm, and possession of a stolen motor vehicle. The first trial concluded on 5 October 2012. Defendant was found guilty on six charges unrelated to the Arby's incident, not guilty on three charges that were related to the Arby's incident, but the jury could not

reach a unanimous verdict on three additional charges related to the Arby's incident: two counts of robbery with a firearm and one count of attempted robbery with a firearm. A mistrial was declared on those charges. Defendant was retried, and found guilty on all three charges on 30 November 2012. Defendant's prior record level was calculated using the judgments entered 5 October 2012, and Defendant was sentenced, based upon the trial court's finding him to be a prior record level III.

In the present case, Defendant argues it was improper for the trial court to use the 5 October 2012 convictions in calculating his prior record level because those charges had been consolidated with the charges that resulted in the 30 November 2012 convictions, and the only reason Defendant ended up being convicted on those charges on a different day was the inability of the first jury to reach a unanimous verdict.

It is clear that, had the jury in the first trial reached guilty verdicts on these three charges as well, none of the 5 October convictions could have been used when calculating Defendant's prior record level. N.C. Gen. Stat. § 15A-1340.14(d) states: "**Multiple Prior Convictions Obtained in One Court Week**.—— For purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the

conviction for the offense with the highest point total is used." N.C. Gen. Stat. § 15A-1340.14(d) (2013). We have noted:

> Nothing within the Sentencing Act specifically addresses the effect of joined charges when calculating previous convictions to arrive at prior record levels. We agree . . . that the assessment of a defendant's prior record level using joined convictions would be unjust and in contravention of the intent of the General Assembly. *See State v. Jones*, 353 N.C. 159, 170, 538 S.E.2d 917, 926 (indicating that "[w]hen interpreting statutes, this Court presumes that the legislature did not intend an unjust result").
>
> Further, "the 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention."

*State v. West*, 180 N.C. App. 664, 669-70, 638 S.E.2d 508, 512 (2006) (citations omitted). It would be unjust to punish a defendant more harshly simply because, in his first trial, the jury could not reach a unanimous verdict on some charges, but in a subsequent trial, a different jury convicted that defendant on some of those same charges. There is no policy reason that would support such a result and, because the General Assembly has not clearly stated an intention to allow for harsher punishments in such situations, we hold the "rule of lenity" forbids such a construction of the sentencing statutes. *Id*. We reverse and remand for resentencing consistent with our holding.

No error in part, dismissed in part, reversed and remanded in part.

Judges STEELMAN and ERVIN concur.