IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-627

No. COA21-143

Filed 20 September 2022

Mecklenburg County, Nos. 18 CRS 218514, 218516

STATE OF NORTH CAROLINA

v.

JAMES EDWARD CAMPBELL, III, Defendant.

Appeal by Defendant from judgments entered 27 February 2020 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 October 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew Baptiste Holloway, for the State.*

*William D. Spence for defendant-appellant.*

MURPHY, Judge.

¶ 1    Expert testimony must comply with the requirements of North Carolina Rule of Evidence 702. Here, where an expert testified that he performed a chemical analysis and further testified as to the result of the chemical analysis, the trial court did not plainly err.

¶ 2    To carry its burden in proving possession of a controlled substance, the State may prove actual or constructive possession. Where, as here, there is overwhelming

evidence of actual possession of a controlled substance, a trial court's error in instructing the jury on constructive possession does not amount to plain error.

Unless a statutory exception applies, N.C.G.S. § 90-96 requires trial courts to conditionally discharge defendants who are convicted of eligible drug offenses and who have no previous convictions for drug offenses. Previous convictions do not include joined convictions, and Defendant was entitled to conditional discharge under N.C.G.S. § 90-96 for his possession of cocaine conviction because he had no disqualifying previous convictions. We remand to the trial court for resentencing.

## BACKGROUND

In January 2018, a confidential informant told Detective Jordan Buehler of the Charlotte-Mecklenburg Police Department that Defendant, James Edward Campbell, III, was selling cocaine in the Charlotte area. In response, Buehler opened an investigation. As a part of the investigation, the confidential informant provided Buehler's phone number to Defendant. Thereafter, Defendant initiated a text-message conversation with Buehler wherein they coordinated a time and place for Buehler to purchase 31.5 grams of cocaine from Defendant.

On 7 February 2018, the day of the transaction, Buehler arrived at the agreed-upon location and texted Defendant "I'm here." Defendant walked to Buehler's vehicle, entered the vehicle, produced a small amount of what appeared to be cocaine, and confirmed that Buehler brought the correct amount of money. Defendant then

exited Buehler's vehicle. Thereafter, Defendant returned to Buehler's vehicle, produced "a clear bag with [a] white powder substance inside of it" ("State's Exhibit 5"), and took Buehler's money. Equipment inside Buehler's vehicle recorded audio and video of the transaction between Defendant and Buehler. This recording was played for the jury at trial. In addition, other surveillance officers testified to observing the transaction from a distance.

¶ 6 On 31 May 2018, Defendant was arrested and subsequently indicted on charges of trafficking cocaine by possession, trafficking cocaine by transportation, and trafficking cocaine by sale. At Defendant's trial, the State's expert, Mark Jackson, a forensic chemist at the Charlotte-Mecklenburg Police Department Forensic Crime Lab, testified to examining State's Exhibit 5. Jackson testified at trial that:

> [JACKSON:] In this case after I weighed [State's Exhibit 5,] I performed a powder test that also requires a gas chromatography mass spectrometry or GCMS for short.
>
> [THE STATE:] What is that in layman's terms?
>
> [JACKSON:] So a color test essentially is dropping a liqui[d] on the powder and it would provide a certain color which give[s] me the indication of what that substance possibly could be or what class of drug it could be. That way I know how to move forward. The GCMS is a piece of equipment that will actually separate out the different components of the powder or what have you. And after it comes out of a long column, separates it out all of this capillary tube [sic]. They'll separate out the components.

> The components come out of one end. It's bombarded with electron fragments and molecules and gives it a fingerprint that I can then [use to] identify the substance.
>
> [THE STATE:] So a lot of things happen to this substance for you to determine what it is?
>
> [JACKSON:] Correct.
>
> [THE STATE:] And the color test gives you an indication of how to proceed?
>
> [JACKSON:] Correct.
>
> [THE STATE:] And based upon the test that you did, did you have an opinion as to the identity of State's Exhibit 5?
>
> [JACKSON:] Yes.
>
> [THE STATE:] What was that opinion?
>
> [JACKSON:] That the substance was cocaine.
>
> [THE STATE:] And did all of your tests support that opinion?
>
> [JACKSON:] Yes.

¶ 7    At the close of the State's evidence, the trial court conducted a charge conference. At the charge conference, the trial judge began to discuss proposed jury instructions and stated, "[A]ctual constructive possession, 104.41. I think that's probably appropriate. What do you all say?" In response, both counsel for the State and counsel for Defendant said, "Yes, Your Honor." Thereafter, the trial judge responded, "All right. The [c]ourt will give that." The trial court instructed on actual and constructive possession.

¶ 8        Following Defendant's trial, the jury found Defendant guilty of the lesser included charge of possession of cocaine and the lesser included charge of sale of cocaine.  Thereafter, the trial court sentenced Defendant to an active term of imprisonment within the presumptive range of 13-24 months on the conviction for sale of cocaine.  The trial court also imposed a consecutive sentence of 6-17 months on the conviction for possession of cocaine, which was suspended for 30 months of supervised probation.  Defendant timely appeals.

## ANALYSIS

¶ 9        Defendant argues that (A) the trial court committed plain error by allowing Jackson to state that, in his opinion, State's Exhibit 5 was cocaine; (B) the trial court committed plain error by instructing the jury on the theory of constructive possession because the theory was not supported by the evidence; and (C) the trial court erred by imposing a supervised probation sentence on his conviction of possession of cocaine rather than a conditional discharge under N.C.G.S. § 90-96.

### A. Jackson's Testimony

¶ 10        Defendant argues that the trial court committed plain error by allowing Jackson to state that, in his opinion, State's Exhibit 5 was cocaine.[1]  Specifically,

---

[1] Defendant seeks plain error review because the issue regarding Jackson's testimony was unpreserved.  The State argues that plain error review is unavailable because the decision to admit expert testimony falls within the discretion of the trial court.  In addition,

Defendant argues that Jackson did not testify to performing a "chemical analysis" and that Jackson's opinion testimony did not satisfy the three-prong reliability test under Rule 702(a) of our Rules of Evidence.

¶ 11 Since our review is limited to plain error, we ask whether a "fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660 (1983)). "Moreover, because plain error is to be 'applied cautiously and only in the exceptional case,' the error will often be one that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Odom*, 307 N.C. at 660). Here, Defendant has not demonstrated plain error in light of our decisions in *State v. Piland*, 263 N.C. App. 323, 339-40 (2018), and *State v. Sasek*, 271 N.C. App. 568, 574-75, *disc. rev. denied*, 376 N.C. 543 (2020).

¶ 12 "[A] criminal defendant fail[s] to establish plain error" in admitting expert opinion testimony as to the identity of a controlled substance "when an expert

---

the State argues that Defendant invited the error by failing to object to the identity of the substance at trial. The State's arguments are unpersuasive. We have held that, "when a defendant does not challenge the admission of the expert testimony at trial, we only review for plain error." *State v. Piland*, 263 N.C. App. 323, 338 (2018). In addition, if failing to object constituted invited error, then we would never be able to review such unpreserved issues for plain error. Therefore, we will review this first issue for plain error.

testifie[s] that a chemical analysis was performed, but the evidence 'lack[ed] any discussion of that analysis.'" *Sasek*, 271 N.C. App. at 574 (quoting *Piland*, 263 N.C. App. at 339). In *Piland*, the defendant was discovered in possession of a pill bottle containing a large quantity of white tablets. *Piland*, 263 N.C. App. at 326. The State's expert testified that she "performed a chemical analysis" and, based on the results, determined that the pills she examined were hydrocodone; however, her testimony "lack[ed] any discussion of that analysis." *Id.* at 338-39. The defendant in *Piland* argued that the trial court committed plain error in admitting the expert testimony under Rule 702(a) because the expert "did not identify the test she performed, describe how she performed it, or explain[] why she considered it reliable[,]" but simply said she "performed a chemical analysis." *Id.* at 339.

¶ 13        While we held in *Piland* that "it was error for the trial court not to properly exercise its gatekeeping function of requiring the expert to testify to the methodology of her chemical analysis[,]" we made clear that "the error d[id] not amount to plain error because the expert testified that she performed a 'chemical analysis' and [testified] as to the results of that chemical analysis."[2] *Id.* at 339-40; *see Sasek*, 271

_____

[2] In *Piland*, the expert testified that she "performed a chemical analysis" and, "based on the results of [her] analysis," she determined that the pills she examined were hydrocodone. *Piland,* 263 N.C. App. at 338-39. The expert did not testify to the specific results of the "chemical analysis"; however, we considered the expert's opinion testimony to be testimony "as to the results of that chemical analysis." *Id.* at 340. Therefore, under plain

N.C. App. at 574.

¶ 14      We reach the same conclusion here. Even assuming that the trial court erred in admitting Jackson's testimony under Rule 702(a), the error did not amount to plain error. Although Jackson did not explicitly use the words "chemical analysis," he explicitly testified to using a "gas chromatography mass spectrometry test or GCMS for short[.]" We have previously treated an expert's testimony to "perform[ing] a 'gas chromatography mass spectrometer' test" to be testimony of performing a chemical analysis. *See Sasek*, 271 N.C. App. at 570, 574-75. Therefore, even assuming, *arguendo,* that it was error for the trial court to allow Jackson to testify that, in his opinion, the substance he tested was cocaine, the error did not amount to plain error because Jackson testified that he performed a chemical analysis and testified to the results of that chemical analysis. *Sasek*, 271 N.C. App. 568; *Piland*, 263 N.C. App. 323.

## B. Constructive Possession

¶ 15      Defendant argues that the trial court committed plain error by instructing the jury on the theory of constructive possession because the theory was not supported by the evidence. We disagree. Here, the Record demonstrates overwhelming

---

error review, the expert does not need to explicitly state the scientific results of a test. Rather, the expert's ultimate opinion as to the identity of the substance based on the results of the test used is sufficient to constitute testimony as to the result of the chemical analysis.

evidence that Defendant had actual possession of cocaine. As a result, assuming, *arguendo,* that the trial court erred by instructing the jury on the theory of constructive possession, Defendant cannot demonstrate that the instructional error was a "fundamental error" that "had a probable impact on the jury's finding that [he] was guilty." *Lawrence*, 365 N.C. at 518.

¶ 16        To prove possession, "the State must prove actual possession, constructive possession, or acting in concert with another to commit the crime." *State v. Garcia*, 111 N.C. App. 636, 639-40 (1993). "Actual possession requires that a party have physical or personal custody of the item." *State v. Alston*, 131 N.C. App. 514, 519 (1998). Here, the State provided overwhelming evidence that Defendant had actual possession of cocaine. First, Detective Buehler testified that Defendant entered Buehler's vehicle and sold him a clear bag with a white powder substance in it. More specifically, Buehler testified that Defendant handed Buehler a bag containing a white powder substance, which was later marked as State's Exhibit 5, and that the bag "came from [Defendant's] hand." Second, other surveillance officers testified to observing and recording Defendant meeting with Buehler, getting into Buehler's vehicle, and getting out of Buehler's vehicle. Third, equipment inside Buehler's vehicle recorded audio and video of the transaction between Defendant and Buehler, which was played for the jury. That video depicted Buehler showing Defendant money and Defendant "reach[ing] back and rais[ing] a bag of white powder substance

to his nose and sniff[ing] it."

¶ 17    The above evidence presented at trial constitutes overwhelming evidence that Defendant had physical or personal custody of State's Exhibit 5 and, thus, actual possession of the cocaine. *Alston*, 131 N.C. App. at 519. The evidence of Defendant's actual possession of the cocaine was sufficient to support Defendant's convictions. Therefore, assuming, *arguendo,* that the trial court erred by instructing the jury on the theory of constructive possession, Defendant cannot demonstrate that the instructional error was a "fundamental error" that "had a probable impact on the jury's finding that [he] was guilty" of possession of cocaine. *Lawrence*, 365 N.C. at 518.

### C. Conditional Discharge Under N.C.G.S. § 90-96

¶ 18    Defendant argues that the trial court erred by imposing a supervised probation sentence on his conviction for possession of cocaine rather than a conditional discharge under N.C.G.S. § 90-96.[3] This issue presents a question of statutory interpretation, which is a question of law reviewed de novo. *State v. Jones*, 237 N.C.

---

[3] This issue is preserved for appellate review, despite not being raised below, by operation of statute. *See* N.C.G.S. § 15A-1446(d)(18) (2021) ("Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division. . . . The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law."); *see also State v. Meadows,* 371 N.C. 742, 748 (2018) (holding that "[the] defendant's nonconstitutional sentencing arguments are preserved by [N.C.G.S. § 15A-1446(d)(18)]").

App. 526, 530 (2014), *disc. rev. denied,* 368 N.C. 248 (2015).

¶ 19      In addressing issues of statutory interpretation, our Supreme Court has stated that "the principal goal of statutory construction is to accomplish the legislative intent." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547 (2018). While we have acknowledged that we can infer legislative intent from "the language of the statute, the spirit of the act and what the act seeks to accomplish[,]" our Supreme Court has held that "[s]tatutory interpretation properly begins with an examination of the plain words of the statute." *Id.* (marks omitted); *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶ 10. "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *JVC Enters.*, 2021-NCSC-14 at ¶ 10. Nevertheless, if a literal interpretation of a word or phrase's plain meaning will lead to "absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." *State v. Rankin*, 371 N.C. 885, 889 (2018). Finally, "where the statute is ambiguous or unclear as to its meaning," the courts must further "interpret the statute to give effect to the legislative intent[,]" which includes employing canons of statutory interpretation. *JVC Enters.*, 2021-NCSC-14 at ¶ 10.

¶ 20      At the outset, it is important to note that the scope of our analysis regarding statutory interpretation is not bound by the parties' specific arguments. We have

held:

> To be sure, the parties could have more fully addressed the proper construction of this statute. But there is no question that the meaning of the statute is an issue preserved for appellate review—indeed, it is the primary issue in this case both at the trial level and on appeal. When this Court is called upon to interpret a statute, we must examine the text, consult the canons of statutory construction, and consider any relevant legislative history, regardless of whether the parties adequately referenced these sources of statutory construction in their briefs. To do otherwise would permit the parties, through omission in their briefs, to steer our interpretation of the law in violation of the axiomatic rule that while litigants can stipulate to the facts in a case, no party can stipulate to what the law is. That is for the court to decide.

*Wells Fargo Bank, N.A. v. Am. Nat'l Bank & Tr. Co.*, 250 N.C. App. 280, 286 (2016).

¶ 21    Here, under N.C.G.S. § 90-96(a):

> [W]henever any person who has not previously been convicted of (i) any felony offense under any state or federal laws; (ii) any offense under this Article; or (iii) an offense under any statute of the United States or any state relating to those substances included in Article 5 or 5A of Chapter 90 or to that paraphernalia included in Article 5B of Chapter 90 of the General Statutes pleads guilty to or is found guilty of (i) a misdemeanor under this Article by possessing a controlled substance included within Schedules I through VI of this Article or by possessing drug paraphernalia as prohibited by [N.C.G.S. §] 90-113.22 or [N.C.G.S. §] 90-113.22A or (ii) a felony under [N.C.G.S. §] 90-95(a)(3), the court shall, without entering a judgment of guilt and with the consent of the person, defer further proceedings and place the person on probation upon such reasonable terms and conditions as it may require, unless the court determines with a written finding, and with the

> agreement of the District Attorney, that the offender is
> inappropriate for a conditional discharge for factors related
> to the offense.

N.C.G.S. § 90-96(a) (2021). As an initial matter, Defendant argues that, according to the language of N.C.G.S. § 90-96(a), a trial court *must* place an eligible defendant under a conditional discharge, unless the trial court determines with a written finding, and with the agreement of the District Attorney, that the offender is inappropriate for a conditional discharge for factors related to the offense. We agree. In fact, we have already held that the use of "shall" in N.C.G.S. § 90-96(a) is a mandate to trial courts. *State v. Dail*, 255 N.C. App. 645, 649 (2017). Accordingly, our review of this third issue focuses on whether Defendant was eligible for conditional relief under N.C.G.S. § 90-96(a) due to his joined conviction that, if applicable, would disqualify him from being eligible.

¶ 22     Defendant argues summarily that he was eligible for conditional relief under N.C.G.S. § 90-96(a). The State argues, however, that Defendant's "same-day conviction" for the sale of cocaine qualifies Defendant as having "previously been convicted" of a felony offense under state law and, therefore, renders Defendant ineligible for relief under N.C.G.S. § 90-96(a).

¶ 23     "When examining the plain language of a statute, undefined words in a statute 'must be given their common and ordinary meaning.'" *State v. Reiger*, 267 N.C. App. 647, 649 (2019) (quoting *Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219

(1974)). The meaning of "previously been convicted of" is not defined by statute; thus, we consider its ordinary meaning. In doing so, it is appropriate to refer to dictionaries. *See Town of Boone v. State*, 369 N.C. 126, 132-33 (2016) (referring to dictionary definitions of words to help ascertain the plain meaning of a phrase). "Previous" is defined as "[e]xisting or occurring before something else in time or order[.]" *Previous, The American Heritage Dictionary* 1085 (3rd ed. 1997); *see also Previous, Webster's New World College Dictionary* 1154 (5th ed. 2014) (defining "previous" as "occurring before in time or order").

Defendant applies this language in a way that excludes joined convictions, instead focusing on the lack of applicable convictions in Defendant's prior record worksheet, which he contends entitles him to conditional discharge under N.C.G.S. § 90-96(a), whereas the State contends that the phrase "previously been convicted" includes Defendant's joined conviction for selling cocaine, which would disqualify him from receiving conditional discharge under N.C.G.S. § 90-96(a).

If we were to substitute the plain meaning of "previous" into the statute (and rearrange it for grammar), N.C.G.S. § 90-96 would apply to

> any person who [does] not [have a conviction of] (i) any felony offense under any state or federal laws; (ii) any offense under this Article; or (iii) an offense under any statute of the United States or any state relating to those substances included in Article 5 or 5A of Chapter 90 or to that paraphernalia included in Article 5B of Chapter 90 of the General Statutes [that existed or occurred in time or

order before he] pleads guilty to or is found guilty of (i) a
misdemeanor under this Article by possessing a controlled
substance included within Schedules I through VI of this
Article or by possessing drug paraphernalia as prohibited
by [N.C.G.S. §] 90-113.22 or [N.C.G.S. §] 90-113.22A or (ii)
a felony under [N.C.G.S. §] 90-95(a)(3)[.]

N.C.G.S. § 90-96(a) (2021). Simplified further to the facts of this case, it would apply

to a defendant "who [does] not [have a conviction of] [the felony of selling cocaine

under N.C.G.S. § 90-95(a)(1)] [that existed or occurred in time or order before he]

pleads guilty to or is found guilty of [possession of cocaine under N.C.G.S. § 90-

95(a)(3).]" *Id.*

¶ 26        This reading requires us to consider when a conviction exists. "Our Court has

interpreted [N.C.G.S.] § 15A-1331(b) to mean that formal entry of judgment is not

required in order to have a conviction. In other words, a person has a conviction

immediately upon being found guilty by a jury, or upon pleading guilty or no contest."

*State v. Pritchard*, 186 N.C. App. 128, 130 (2007) (citations and marks omitted) (citing

*State v. Fuller*, 48 N.C. App. 418, 420, *disc. rev. denied*, 301 N.C. 403 (1980)). This

would mean that a conviction would exist here upon the jury's finding of guilt. When

this rule is read in conjunction with the language of N.C.G.S. § 90-96 and applied to

joined convictions entered upon a jury's verdict, in order to have an applicable

previous felony or drug conviction prohibit the application of N.C.G.S. § 90-96, the

jury must have found Defendant guilty of the applicable felony or drug conviction

first.

In *State v. West*, we analyzed whether N.C.G.S. § 15A-1340.11(7) permits the consideration of joined convictions. *State v. West*, 180 N.C. App. 664, 669-70 (2006), *appeal dismissed, disc. rev. denied,* 361 N.C. 368 (2007). N.C.G.S. § 15A-1340.11(7) states "[a] person has a prior conviction when, on the date a criminal judgment is entered, *the person being sentenced has been previously convicted of a crime*[.]" N.C.G.S. § 15A-1340.11(7) (2021) (emphasis added). We held "that the assessment of a defendant's prior record level using *joined convictions* would be unjust and in contravention of the intent of the General Assembly." *West*, 180 N.C. App. at 669 (emphasis added). We also stated "the 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *Id.* at 670.[4]

*In State v. Watlington,* we applied the rule from *West* to prohibit the use of convictions from a first trial as prior convictions in a second trial on charges that were retried following the inability of a jury to reach a unanimous verdict in the first trial.

---

[4] We note that our ruling in *West* was based on N.C.G.S. § 15A-1340.11(7) and was not based on N.C.G.S. § 15A-1340.14(d), which states, as it did when *West* was decided, "[f]or purposes of determining the prior record level, if an offender is convicted of more than one offense in a single [S]uperior [C]ourt during one calendar week, only the conviction for the offense with the highest point total is used. If an offender is convicted of more than one offense in a single session of [D]istrict [C]ourt, only one of the convictions is used." N.C.G.S. § 15A-1340.14(d) (2021). As a result, our prior interpretation of the language of N.C.G.S. § 15A-1340.11(7) in *West* is applicable without consideration of the requirements of N.C.G.S. § 15A-1340.14(d).

*State v. Watlington*, 234 N.C. App. 601, 608-09, *disc. rev. denied,* 367 N.C. 791 (2014).

We held:

> It would be unjust to punish a defendant more harshly simply because, in his first trial, the jury could not reach a unanimous verdict on some charges, but in a subsequent trial, a different jury convicted that defendant on some of those same charges. There is no policy reason that would support such a result and, because the General Assembly has not clearly stated an intention to allow for harsher punishments in such situations, we hold the "rule of lenity" forbids such a construction of the sentencing statutes.

*Id.* at 609.

¶ 29        It is appropriate here to consider how we have interpreted other sentencing statutes in light of our previous treatment of N.C.G.S. § 90-96 as a sentencing statute. *See Dail*, 255 N.C. App. at 650 (citing *State v. Burns,* 171 N.C. App. 759, 761 (2005)) ("[*State v. Burns*] indicates that the general criminal sentencing statutes fill in the gaps in [N.C.G.S.] § 90-96."). Given the similarity of the language in N.C.G.S. § 15A-1340.11(7)—stating "the person being sentenced has been previously convicted of"—and the language in N.C.G.S. § 90-96—stating "any person who has not previously been convicted of"—we conclude the reasoning from *West* similarly applies to N.C.G.S. § 90-96 to prohibit consideration of the joined convictions in determining whether a defendant was previously convicted of an applicable offense. N.C.G.S. § 15A-13.40.11(7) (2021); N.C.G.S. § 90-96 (2021); *see West*, 180 N.C. App. at 669-70 (marks and citations omitted) ("[T]he assessment of a defendant's prior record level

using joined convictions would be unjust and in contravention of the intent of the General Assembly. Further, the 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention."); *see also State v. High,* 271 N.C. App. 771, 775 (2020) (marks omitted) (applying *West* and *Watlington* to conclude "none of [the joined convictions] could have been used as a prior conviction for purposes of sentencing on any of the others"). Here, like in *West* and *Watlington,* N.C.G.S. § 90-96 does not clearly state an intent to consider joined convictions in determining the applicability of the statute; thus, the rule of lenity forbids us from interpreting N.C.G.S. § 90-96 to increase the penalty it places on defendants. *State v. Boykin*, 78 N.C. App. 572, 577 (1985) ("[T]he 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention.").[5]

---

[5] We also note that other statutes support this interpretation of the General Assembly's intent. For example, N.C.G.S. § 20-179—a statute concerning sentencing after a conviction for impaired driving—indicates that "[a] prior conviction for an offense involving impaired driving" can be considered a grossly aggravating factor if "[t]he conviction occurs after the date of the offense for which the defendant is presently being sentenced, but prior to or contemporaneously with the present sentencing." N.C.G.S. § 20-179(c)(1)(b) (2021). This statute reflects that the General Assembly knows how to clearly indicate that same-day convictions should be included within sentencing, but chose not to here. We have held that, "[w]hen a legislative body includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion." *N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768 (2009) (marks omitted). Although these are not

¶ 30    We hold N.C.G.S. § 90-96 applies to Defendant despite his joined conviction because said joined conviction does not constitute a previous conviction.[6] Furthermore, the remaining requirement of N.C.G.S. § 90-96 is satisfied for Defendant, as he was convicted of felony possession of cocaine under N.C.G.S. § 90-95(d)(2). *See* N.C.G.S. § 90-96 (2021) (emphasis added) ("Whenever any person who has not previously been convicted of [an applicable felony or drug offense] pleads guilty to or *is found guilty of . . . a felony under [N.C.G.S. §] 90-95(a)(3),* the court shall, without entering a judgment of guilt and with the consent of the person, defer further proceedings and place the person on probation upon such reasonable terms and conditions as it may require, unless the court determines with a written finding, and with the agreement of the District Attorney, that the offender is inappropriate for a conditional discharge for factors related to the offense."). Therefore, the trial court was required to provide conditional discharge in accordance with N.C.G.S. § 90-96 unless the trial court and the State agreed that it was inappropriate for Defendant.

¶ 31    In light of this error, Defendant requests that we remand to the trial court for

_____

the same acts, they are both sentencing statutes, and we presume the General Assembly understood it could have expressly required the consideration of same-day convictions, but elected not to.

    [6] We note that the General Assembly may address this statute to clarify its application to the situation presented *sub judice* as well. *See Wake Radiology Diagnostic Imaging LLC v. North Carolina Department of Health and Human Services*, 279 N.C. App. 673, 2021-NCCOA-536, ¶ 7 (2021) ("We interpret the law as it is written. If that interpretation results in an unintended loophole, it is the legislature's role to address it.").

entry of a conditional discharge pursuant to N.C.G.S. § 90-96. The State, however, requests a new sentencing hearing where the trial court can determine whether conditional discharge is appropriate for Defendant. We agree with the State that a new sentencing hearing on this conviction is appropriate.

¶ 32       In *Dail*, we noted that "it [was] clear that the trial court did not afford either party the opportunity to establish [the] defendant's eligibility or lack thereof" for conditional discharge under N.C.G.S. § 90-96. *Dail,* 255 N.C. App. at 650. As a result, we "vacate[d] the trial court's judgment, and remand[ed] th[e] matter to the trial court for a new sentencing hearing. The trial court [was ordered to] follow the procedure for the consideration of eligibility for conditional discharge as prescribed by statute." *Id.* Here, there was no discussion whatsoever of N.C.G.S. § 90-96, and, as a result, like in *Dail,* we conclude that the appropriate remedy is to vacate the sentence entered by the trial court and remand for resentencing.

## CONCLUSION

¶ 33       Assuming, *arguendo,* that the trial court erred in admitting Jackson's testimony under Rule 702(a), the error did not amount to plain error. *Piland*, 263 N.C. App. at 338-40; *Sasek*, 271 N.C. App. at 574-75. Assuming, *arguendo,* that the trial court erred in instructing the jury on the theory of constructive possession, the error did not amount to plain error as the Record demonstrates overwhelming evidence that Defendant had actual possession of cocaine. Accordingly, the error

could not have "had a probable impact on the jury's finding that [] [D]efendant was guilty" of possession of cocaine. *Lawrence*, 365 N.C. at 518. N.C.G.S. § 90-96 applies to Defendant despite his joined conviction. Thus, the trial court erred in failing to address N.C.G.S. § 90-96, and we vacate Defendant's sentence as to his conviction of felony possession of cocaine and remand for resentencing.

NO PLAIN ERROR IN PART; VACATED AND REMANDED FOR RESENTENCING IN PART.

Judges ZACHARY and COLLINS concur.